[Civil No. 3184.   Filed June 13, 1932.]

[12 Pac. (2d) 294.]

HELEN KING, JACK EDWARD KING, VINCENT V. KING, FRANK E. KING, MYRTLE KING and MARGARET KING, Petitioners, v. ALABAM'S FREIGHT COMPANY, a Corporation, Defendant Employer, THE INDUSTRIAL COMMISSION OF ARIZONA, Defendant Insurance Carrier, and R. B. SIMS, BURT H. CLINGAN and WM. H. HUNTER, Members of the Industrial Commission of Arizona, Respondents.

Mr. H. S. McCluskey, for Petitioners.

Mr. Burt H. Clingan and Mr. Albert Mackenzie, for Respondent Industrial Commission of Arizona.

LOCKWOOD, J.—Helen King, Jack Edward King, Vincent V. King, Frank E. King, Myrtle King and Margaret King, hereinafter called petitioners, in the early part of 1930 filed an application before the Industrial Commission of Arizona, hereinafter called the commission, asking compensation for the death of John David King, the husband of the first petitioner and the father of the others, which death it was alleged was caused on January 11th, 1930, by an accident arising out of and in the course of his employment by the Alabam's Freight Company, a corporation, hereinafter called the respondent, while he was endeavoring to care for certain employees and property of respondent he had reason to believe were exposed in a severe snowstorm on the road between Prescott and Jerome.

An award was made on July 3rd, 1930, denying compensation on two grounds: First, that deceased was not at the time of his death in the service of re-

spondent; and, second, that if he was, his death did not arise out of his employment.

The matter was brought before us in the usual manner on *certiorari,* and we held that the evidence as it then stood did not support either the finding of the commission that deceased was not employed by respondent or the one that his death did not arise out of and in the due course of such employment, and set the award aside. The evidence as shown by the record then before us is set forth quite fully in our opinion. *King* v. *Alabam's Freight Co.,* 38 Ariz. 205, 298 Pac. 634.

Subsequent to the receipt of the opinion and mandate of this court, the commission on the twenty-ninth day of May, 1931, served notice on petitioner Helen King, her attorney, H. S. McCluskey, and respondent that on June 26th, at 10 A. M., the commission would proceed to hear and dispose of the application for compensation. On that date and on several occasions thereafter the commission proceeded to take evidence, both old and new, covering all of the material issues upon which it was necessary that findings be made to determine the question as to whether petitioners were entitled to compensation, treating the proceedings as in effect a hearing *de novo* upon the original application for compensation.

On December 17th an award was made which contained some twenty-nine findings of fact and denied any compensation to petitioner. These findings of fact are full and complete, but it is not necessary that we set them all forth in full in this record. Those material to the determination of the case on *certiorari* are the following:

"5. That the death of said John David King did not arise out of or occur in the course of his employment by said Black Canyon Stage Company."

"11. That said Alabam's Freight Company sent two trucks out from Phoenix to Prescott and Jerome

on Friday, January 10th, 1930. That said trucks were stalled by the storm at Congress Junction approximately forty miles south of Prescott and that the Prescott office was notified of the disposition of these trucks and contents.

"12. That the Prescott agent for Alabam's Freight Company, J. L. Freeman, had charge of the northern Arizona district of said company and notified the Jerome agent, Timothy Kirkpatrick, Saturday morning, January 11th, 1930, that all traffic around Prescott was tied up by the storm and that no trucks would attempt to reach Jerome that day."

"14. That before leaving his house that morning said Freeman told his wife, Violet Freeman, of the conversation with Kirkpatrick. That the fact that no trucks of the defendant employer were on said Prescott-Jerome road and that no trucks would attempt to reach Jerome that day was again made clear to said Timothy Kirkpatrick by Mrs. Violet Freeman, wife of J. L. Freeman, about noon on said January 11th, 1930."

"25. That no trucks either of the Alabam's Freight Company or the Black Canyon Stage Company were on the Prescott-Jerome road on that date, which facts were known to said Kirkpatrick and King."

"27. That in making such trip (the one on which they died) said Kirkpatrick and King were not in the performance of any duty to, or within the scope of employment of defendant employer."

Petitioners have again brought the award denying compensation before us for review. They make some seven assignments of error, but these present in substance but three questions of law for our determination, and we shall consider the case upon these three questions.

It is the contention of petitioners, in substance, that when this court rendered its previous decision setting aside the award denying compensation originally made by the commission, the latter had no jurisdiction to reopen the case for the taking of any evidence upon any issue except perhaps as to the amount of

compensation to be paid the petitioners, for the reason that our decision was *res adjudicata* as to all the matters embraced therein and was binding upon the commission. It is the position of the commission, on the other hand, that the effect of setting aside an award is similar to the remanding of a case to the superior court for a new trial, and that the commission after such a remand tries the case *de novo,* and is not precluded from taking new evidence bearing on the issues of the case.

We have assumed the position of the commission to be correct in *Ocean Accident & Guarantee Corp.* v. *Industrial Com.,* 32 Ariz. 54, 255 Pac. 598, and Id., 34 Ariz. 175, 269 Pac. 77; but since the question was not expressly argued or decided therein, we consider it as a matter of first impression.

We have held repeatedly and consistently that while the commission is not strictly speaking a court, it is nevertheless a tribunal established by the legislature and having bestowed upon it the right to determine questions of fact and to apply the existing law thereto in matters within the jurisdiction conferred upon it by the Compensation Act (Rev. Code 1928, §§ 1391–1457); *Federal Mutual Liability Ins. Co.* v. *Industrial Com.,* 31 Ariz. 224, 252 Pac. 512, and except as the Compensation Act expressly provides otherwise, we have treated hearings before the commission, generally speaking, as though they were trials in the superior court, and have applied to such hearings the fundamental rules governing proceedings in such courts (*Federal Mutual Liability Ins. Co.* v. *Industrial Com., supra; Maryland Cas. Co.* v. *Industrial Com.,* 33 Ariz. 490, 266 Pac. 11; *Holloway* v. *Industrial Com.,* 34 Ariz. 387, 271 Pac. 713; *Blankenship* v. *Industrial Com.,* 34 Ariz. 2, 267 Pac. 203).

In the very recent case of *Doby* v. *Miami Trust Co.,* 39 Ariz. 228, 5 Pac. (2d) 187, we say, referring to the

duties and powers of the commission in making awards:

"The commission in making those awards is bound by the same fundamental principles of law and justice as are the courts, and the first principle applicable is that in considering an application for compensation it must act *judicially,* and in no sense as a partisan.

"When the applicant presents his petition for an award of compensation for an injury, he is in the same position as the plaintiff who applies to a court of law for a judgment against some defendant. . . . All it [the commission] can do is consider the evidence and determine whether as a matter of law and fact the claim is well-founded. As such we conceive is the jurisdiction of the commission *when it is asked· to make an award.* . . . If the evidence is not sufficient as a matter of law to sustain a judgment in favor of plaintiff, a court has no option but to render judgment for the defendant. If, on the other hand, the evidence in its opinion does sustain the judgment, it has no option but to render judgment in favor of the plaintiff. And so with the commission; no matter how doubtful the evidence or how difficult the conclusion is, the issue must be met and the decision made. . . .

"It is the duty of the commission, whenever a claim for compensation is presented to it, to search calmly, impartially, and judicially through all the sources available to it, either through presentation by others or by its own investigation, for the truth, uninfluenced by any consideration but the law and the facts, and then· to make such award as in its opinion that law and those facts justify. . . . "

We think our previous decisions show clearly and emphatically that not only are the general principles governing superior courts applicable to the commission in its determining the facts and applying the law in making its awards, but in addition the commission not merely must take such evidence as may be presented to it by others, but it should make an inde-

pendent search through its own investigators for such evidence as may establish the true facts in any given case. We think that none can question this to be the power and duty of the commission on an original hearing of an application for compensation.

Is the situation changed, however, when its original award has been set aside by this court? The powers of the Supreme Court in ordinary cases are very broad. Under the Code, when an appeal comes before us from the superior court, we may either affirm, reverse or modify the judgment appealed from, or may render the judgment which the lower court should have rendered or may order the lower court to enter the proper judgment or to grant a new trial. Section 3681, Rev. Code 1928. For some reason, however, the legislature, in providing for the jurisdiction of the Supreme Court on review of awards of the commission, has expressly limited our jurisdiction to either affirming the award *in toto* or setting it aside in the same manner. We have no power to make findings of fact, to modify the award, to enter such award as it appears to us the commission should have made, or to send it back to the commission with specific instructions to make any particular kind of an award. What, then, is the legal effect of the setting aside of an award of the commission by this court? It seems to us there are but two possible alternatives. The first is that the commission has lost all jurisdiction of the proceedings when the case is brought before us on *certiorari*, and that such jurisdiction is not restored by the setting aside of the award. If this be the case, if the original award was in a claimant's favor and it is set aside, with no power in the commission to proceed further, he has no compensation or any possibility of obtaining it, while if the original award denied him compensation, again he has no method of obtaining it. In other words, the setting aside of any award of any nature for any reason would be in effect

the denial of compensation to the injured workman. Such a rule would be so obviously unjust that it is impossible for us to think for one moment that it represents the intention of the legislature.

The only reasonable alternative is that the matter goes back to the commission and that it has jurisdic-tion to make some kind of new award. How far then does its power in this respect reach? Bearing in mind that the primary duty of all bodies charged with judicial functions and the power to make orders binding upon the person and property of those subject to their jurisdiction is to ascertain the true facts, so that an order in harmony with the law as applied to such facts may be made, we think the only reasonable conclusion that can be reached is that when an award is set aside it is not only within the jurisdiction of the commission, but the positive duty of that body to reconsider all the issues of fact involved in the proceeding so that the proper award may finally be made.

The petitioners have urged that the commission in its further proceedings is bound by the previous rulings of this court. This is, of course, true, but we think petitioners forget that the applicability of any rule of law is determined by the existence or nonexistence of certain facts. When in any opinion we state and apply a rule of law, it is always predicated on the facts shown by the record *as it then exists.* If on a new trial the facts are shown to be so different that a  different rule of law is the proper one to apply, it would be absurd to hold the principles of *res adjudicata* require the trial court to follow rules which we have applied only to the facts as shown by the previous record. *Robinson* v. *Thornton,* 114 Cal. 275, 46 Pac. 79; 4 C. J., p. 1219, and notes.

A similar question has been before the Supreme Court of Utah in the recent case of *McGarry* v. *Industrial Com.,* 64 Utah 529, 39 A. L. R. 306, 232 Pac. 1090. The Utah statute in regard to the judgment to be

rendered by the Supreme Court on *certiorari* from an award of the Industrial Commission is practically identical with ours, and, indeed, our Compensation Act is undoubtedly to a great extent taken from that of Utah. The contention that the commission was without power to take further evidence after the original award had been set aside, was made in that case as in this. The court in dealing with that objection says:

"The statute should be given a reasonable interpretation. If the interpretation of plaintiffs is correct, it might lead to absurd, and, oftentimes, lamentable results. Let us take the instant case, for example, and eliminate every objection made by plaintiffs except the one we have just decided, in which we have held the award should be annulled and set aside because the Commission was without authority to hear the evidence in Idaho. That being the only objection, the result would be the Commission would be powerless to hear further evidence even within the state of Utah, in which it has undoubted jurisdiction. It might be a case of unquestioned dependency and extreme hardship, but justice would fail because the Commission made an honest mistake as to the extent of its jurisdiction. It is hardly to be presumed that such an interpretation of the statute fairly reflects the intention of the Legislature. It is more probable that the Legislature contemplated that if the Commission, by mistake in a given case, should exceed its jurisdiction and its award be annulled on that account it should not be ousted of its jurisdiction altogether, but be permitted to proceed in the determination of the rights of the parties, observing, however, any limitations imposed by the court which annulled the award. There is nothing whatever in the Utah Industrial Act from which it can be logically inferred that the annulment of an award by the Supreme Court for specific reasons set forth in its opinion ousts the Commission of its jurisdiction of the case for purposes otherwise just and lawful. We are therefore not prevented by anything found in the statute from giving it such an interpretation as will

avoid results which the Legislature evidently could not have intended.

"It is possible that plaintiffs may feel that the example we have given is unfair because it involves only a technical error of the Commission in which the merits of the case were not involved. Let us suppose a case in which the merits are involved and in which the Commission finds that the applicant, under the evidence, is *not* entitled to compensation. The applicant brings the case before this court for review. The court finds, as matter of law, that all the evidence is in favor of the applicant and that he is *justly entitled* to compensation. For that reason the court annuls the award and sets it aside, which is all it can do under the law. What then becomes of the case? If the Commission's jurisdiction of the case is exhausted so that nothing further can be done in favor of the applicant, the decision of this court, favorable to the applicant, would itself be a nullity as far as practical results are concerned. Such an interpretation of the statute, in our opinion, is not only wrong, but a serious reflection upon the intelligence of the Legislature which enacted the law.

"The interpretation contended for by plaintiff does not insure even-handed justice. It always inures to the benefit of the employer and his insurer and against the applicant. If the Commission denies compensation, that is all the employer and insurer can ask. If the Commission allows compensation and this court sets the award aside, that ends the case against the applicant; and, finally, if the Commission denies compensation and this court sets the award aside because compensation should have been allowed, the applicant gets nothing. We are firm in our conviction that the Legislature of this state intended no such unreasonable and arbitrary discrimination against the poor unfortunates whom the law was manifestly intended to benefit rather than to place at a disadvantage.

"Plaintiffs invoke and rely upon the doctrine of *res adjudicata* and cite the following cases: *Centralia Coal Co.* v. *Industrial Com. et al.*, 297 Ill. 451, 130 N. E. 727; *Harris* v. *Castile Mining Co.*, 222 Mich. 709, 193 N. W. 855; *Estate of P. D. Beckwith, Inc., et al.*

v. *Spooner*, 183 Mich. 323, 149 N. W. 971, Ann. Cas. 1916E, 886; *Choctaw Portland Cement Co.* v. *Lamb*, 79 Okl. 109, 189 Pac. 750.

"In the Centralia Coal Co. case, *supra*, the second headnote states the doctrine enunciated in that case: 'Where Industrial Commission's decision refusing injured employee compensation became final on failure to bring it up for review by the court, the Commission had no jurisdiction, by subsequent hearing, to review and set aside the decision; the previous decision being *res judicata*.'

"The principle enunciated in the above quotation was recognized by this court in *Salt Lake City* v. *Industrial Com.*, 61 Utah, 514, 215 Pac. 1047. It was there held that the Commission had no jurisdiction to entertain a new petition for compensation after denial thereof on a former petition, and where the applicant had not applied to this court to review the award, as provided by law. We have no fault to find with the Centralia Coal Co. case, but fail to see what application it has to the question presented here. Nor do the other cases cited shed any light upon the question submitted for our determination in view of our interpretation of the law, which limits the power of this court on review to either affirm or set aside an award.

"We are forced to the conclusion that in order to give the statute any practical and beneficial effect, a judgment by this court on review, setting aside an award, does not affect the jurisdiction of the Commission except as limited by the decision of the court. Such interpretation of the statute is clearly necessary in order to reflect the evident intention of the Legislature. It may be that such interpretation will tend in some instances to prolong litigation, but it is far more just to prolong litigation in a case now and then than it is to violate the manifest spirit and purpose of the law." .

The same question arose in *California Casualty Indemnity Exchange* v. *Industrial Acc. Com.*, 190 Cal. 433, 213 Pac. 257. The Industrial Commission doubted its power to take new evidence when an

award was set aside, and the Supreme Court of California said:

"The Industrial Accident Commission petitions for a rehearing or a modification of the judgment of this court, so that the commission can admit additional evidence. It is unnecessary to modify the judgment for this purpose. The effect of our decision is to vacate the judgment heretofore rendered by the Industrial Accident Commission and to set the matter at large, for proceedings not inconsistent herewith. *Carstens* v. *Pillsbury,* 172 Cal. 572, 578, 158 Pac. 218."

We are of the opinion that the reasoning of the Supreme Court of Utah is so clear, so logical, and convincing that we can add nothing thereto. We hold that when an award of the Industrial Commission is set aside the effect of such order is to remand the case to the commission for a trial *de novo,* and that it is not only the right but the duty of the commission, if any new evidence is available which will throw more light upon the case, to see that such evidence, if admissible under the rules of law, is properly presented, so that its final award may be based upon the true facts.

The second question raised by the petitioners is as to certain alleged departures of the commission from its own rules of procedure in the new hearing. We think this objection is more technical than substantial in its nature. Section 1453, Revised Code of 1928, reads as follows:

"Latitude of commission in procedure. The commission shall not be bound by the rules of evidence, or by any technical or formal rules of procedure, other than as herein provided; but may make the investigation in such manner as in its judgment is best calculated to ascertain the substantial rights of the parties and to carry out the spirit of this article."

Under these circumstances, and the rule of the commission to the effect that "the commission may in the

interest of justice excuse the failure of any person to comply with any of these rules,'' we think that unless a departure from its rules of procedure is such as to prejudice the substantial rights of the person complaining thereof, it is not of sufficient importance to justify the setting aside of an award. If it appeared that any of these alleged departures had prejudiced or hampered petitioners in the presentation of their case, the situation would be very different, but we do not understand them to contend that they did not have as full and complete an opportunity to present any evidence, new or old, or meet and combat the evidence offered by respondent and its witnesses, as they would have had if every rule of the commission had been strictly followed.

Counsel for petitioners urges that we have refused to consider petitions for *certiorari* filed in this court more than thirty days after an award has become final, and that since we have applied this strict rule to petitions on *certiorari* we should hold the commission to an equally strict compliance with its rules. The answer is that the thirty-day rule referred to is statutory and jurisdictional, while the rules which it is contended the commission has violated are its own rules, by their terms subject to waiver, and in no sense jurisdictional.

We come, then, to the third question as to whether the evidence sustains the findings of the commission. This evidence is voluminous, but we need discuss it only in so far as it applies to one issue, and that is whether or not the deceased was in the employ of respondent when he met his death. It was the contention of petitioners that the deceased was employed by Kirkpatrick, the agent of respondent, for the purpose of helping Kirkpatrick bring in a truck belonging to respondent which Kirkpatrick had reason to believe had become stalled in the snow on Mount Mingus. On the record of the first hearing we held there

was no evidence which would justify a finding that deceased was not so employed by Kirkpatrick. At the new hearing there was the new testimony of several witnesses to the effect that Kirkpatrick was advised long before he and deceased started up the mountain that no trucks belonging to respondent could possibly be on Mount Mingus, and that none would be there that day. This evidence, if believed by the commission, and of course from its findings we must assume it did believe it, would be sufficient to justify it as a matter of law in holding that deceased did not go out on the journey during which he met his death for the purpose of helping any stalled trucks belonging to respondent, and since it is not contended he was ever in the employ of respondent for any other purpose, if such was not his purpose in going out, he could not have been in the employ of respondent when he met his death. In fact, counsel for petitioners admitted honestly and frankly, during the argument before this court, that the state of the record was such that he could not say as a matter of law there was insufficient evidence to support the finding of the commission on the all vital issue of employment. His contention on that issue is that the commission was wrong in its findings, and he urges most strenuously that it did not act judicially, but in a partisan manner and from improper motives. We, of course, in this proceeding cannot consider such an argument. We are bound to assume that judicial bodies act honestly and conscientiously and that their findings are based on their unbiased judgment of the evidence as it appears in the record.

We regret indeed the unfortunate situation in which petitioners find themselves as a result of the death of the husband and father, but our judgment must be based upon the law as it exists and upon that alone. Since under the law the commission had the jurisdiction to hear new evidence on the issues involved when

we set aside the original award and since such new evidence is sufficient to support the finding that deceased was not employed by respondent at the time of his death, we have no other option than to affirm the award and it is so ordered.

McALISTER, C. J., and ROSS, J., concur.